I filed a motion to remand this matter to the Board of Immigration Appeals based upon this Court's holding in Noriega-Lopez v. Ashcroft. The holding in that case is that only an immigration judge may issue an initial order of deportation. The Court held that the authority of the Board of Immigration Appeals is limited to affirming decisions of the immigration judge, or where it disagrees with the immigration judge's findings, it should remand the case to the Court for decisions consistent with its instructions. Well, let me ask you this. If that's correct, what are we supposed to do with your petition for review? Check it or deal with it, deal with the BIA's decision, or just simply reverse because the BIA – reverse and vacate because the BIA lacked authority and had to remand the BIA? It would be to reverse and vacate and send it to the Board because their decision was ultra-virous. All right. Let me track through a second. So we check the substantive grounds of your petition, right? Right. So the BIA then sends it back to the IJ for further proceedings consistent with its opinion. Correct. So the IJ enters a one-liner that says, you're out of here, and then you come back. Is that the deal? Well, the other option they could do is they could put them in removal proceedings, which is what – or deportation. Well, it would be removal proceedings, and that is what the would-be petitioners had wanted that, rather than to be placed in exclusion. In being placed in exclusion, he's foreclosed from a whole variety of applications which he would – I just want to be sure I understand where we're at, because if the BIA couldn't order him excluded itself, it has an opinion in this case. It does. So it would remand to the IJ for proceedings consistent with the BIA's opinion. Right. Right? That's right. And the IJ then says, well, that leaves me no choice. I now issue the order of exclusion. Well, in that case, we could take it back up to the Board. Which is going to say the IJ just did exactly what we told the IJ to do, and then you come back up to here, right, on the same ground that you're now asserting. I just want to be sure I understand all this. Or, I mean, I think that we send it back to the Board of Immigration Appeals and note that their decision was an error. I mean, I think we can also go on the merits of my appeal. Well, I mean, which is it? They either had no authority to issue the order, in which case you want – you've asked us to dismiss the petition. I mean, that's the law. The law, as it is at this time, is that they did not have the authority to issue the decision which they made. So, you know. Okay. Let me just see if I can try it in a different way. If we were to do that, and it goes back to the IJ, is there any possibility that the IJ's decision comes out any differently from the posture of the case at this very moment? I don't know. Because if there's not, what are we doing except causing three years more delay and needless paper shuffling? Right. Well, if the IJ were – I mean, if it were to go back, I think the board could send a decision back to the board to say that they improperly decided their case. Well, suppose I don't think they did. Suppose I don't think they did. Yeah. Yeah. Well, that's a different problem, I guess. But I'm just trying to understand whether you think there is any wiggle room for the IJ to do anything different from what the BIA said for the IJ to do. I think there is. I mean, I think the IJ's decision was correct. But the BIA doesn't. Yeah. Okay. And so the only thing at this moment, if the BIA was in error by issuing the order itself and it has to remand, the IJ is bound by the BIA's decision. Correct. Okay. So on remand, is there anything else open to the IJ to do other than, in effect, ministerially enter? The case would start over again, basically. Now, if you were – if I were to withdraw the motion to remand or the court was determined that, in fact, the board had jurisdiction to make its case, I don't know how it could do that in light of Noriega. Then it could also find that the board was in error in not applying the Flutti Doctrine to this case and that, you know, we have authority that says a person who has been granted temporary resident status can have the Flutti Doctrine apply. Who would apply that? The board? No. The IJ could find that the board. The Ninth Circuit in Aguilera, Medina. But I'm following up on Judge Reimer's questions. Who's going to decide? If you want us to send this back to the board, who could possibly decide that the Flutti Doctrine ought to be applied here? Well, no, that would be for the – the Ninth Circuit would have to decide that, because the board's asking us. You're asking us just to send this back without deciding any of these legal questions. Well, I think it could decide the legal questions. I mean, I guess as an alternative, though, when I saw the case in Noriega, it did call into question the jurisdiction of the board to issue an initial order of exclusion. But you're suggesting that we both decide the merits and grant that motion? I guess you would have to grant the merits of the case. But then it would have to be sent to the board to terminate proceedings. Okay. Do you – go ahead. I mean, and I think that our positions are, as far as the merits of the orders, the judge's order of terminating the case are laid out in the briefs. Yes. Well, would you like to hear what the government's position is? What the government's position is on that, yes. All right. Why don't we do that.  Mr. O'Connor. What do we do about the pickle? Yes, Your Honor. The government's position would be that Noriega-Lopez is distinguishable. The reason it's distinguishable is because that was a posterior removal case, and     It's a posterior removal case. Therefore, the amendments to the Immigration and Nationality Act made by ARERA do not apply to this case. Instead, this court is guided by the old law, INA Section 236B. And under that law, it's stated that a decision of a special inquiry officer or an immigration judge to admit an alien in exclusion proceedings could be appealed to the Attorney General, and that any appeal would operate to stay any final action with respect to the alien whose case was appealed until the final decision of the Attorney General is made. Now, the Attorney General's delegates are the immigration courts and the board. There is nothing in old 236, Section 236 of the INA, that stated that orders of exclusion could only be entered by special inquiry officers or immigration judges. And, in fact, the regulations in effect for exclusion proceedings gave the board powers, invested the board with the discretion, excuse me, the board is granted authority to exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for disposition of the case. Under ACFR 3.1d.2, which govern the finality of board decisions, it provided that the board may, but was not required to, return a case to the special inquiry officer for such further action as may be appropriate. Because that was in the board's discretion, the old regulations appeared to give the board the authority to go ahead and enter orders of deportation or exclusion as a matter of first instance. I apologize for not providing the court with supplemental authority at this time. I can't do so. I did do some research and found seven board-published decisions under old law where the board, the faster, the similar, an immigration judge terminated proceedings, the government then appealed to the board, and instead of remanding, the board entered an order of deportation or exclusion as a matter of first instance. And the authority of the board to do that was undisturbed upon further review in the course of appeals. In fact, in one of those cases, which was LAPINEX v. INS 750 F2D 1427, this court was reviewing such a decision, although it disagreed with the board's evaluation of whether or not the evidence supported the charge of deportability, and it did remand because it disagreed with that, it left undisturbed the fact that the board had entered the order of deportation in the first instance, and it did in its concluding paragraph say that it reviewed the board's determination that the alien was deportable as charged. So therefore, we would argue that Noriega-Lopez is distinguishable because this is an old law case and the board could properly enter an order of exclusion in the first instance. Now, if the court should disagree with us, we would say that it is bound by its language in Noriega-Lopez that if the board did in fact not have the authority, then basically the proceedings were a legal nullity. That's the language the court used in Noriega-Lopez. Therefore, it's the only thing it can do is to send it back. It shouldn't go on to the merits. Again, because it's an old law case, though, we'd recognize that, you know, the judicial resources are best spent because the board did have the authority to do this, to go ahead and proceed to the merits. Now, the central issue on the merits, Your Honor, is whether the Flutie Doctrine, which this court extended to the lawful temporary residence under the Special Agricultural Workers Program in Aguilera Medina, should now be extended in this case to an applicant whose application for temporary residence was denied a full nine months prior to his departure and then attempted reentry into the United States. Because such an extension of the Flutie Doctrine is not supported by the expressed language of the Immigration and Nationality Act, specifically Section 210, the government asks that this Court should find that Petitioner did make an entry on January 5th or January 4th, 1993, and that because he was not in possession of a valid entry document, he was lawfully ordered excluded. If the application had been denied and if there is no due process problem with respect to his lack of notice of the denial, then is there any need to decide whether Flutie applies in this situation? There would not be, Your Honor. Again, we would argue that because he did not have a valid entry document at the time he came back in. Is there any hat? In your view, I guess put differently, if he has no – that would leave him with no legal status in this country at all. Exactly. As of the date that the Board denied, March 17th, 1992. Under Ortiz. Yes. He had no valid status. Basically, he was an alien who had entered without inspection. And then once he left in December of 1992 and attempted to come back, he was an applicant for admission without a valid entry document and therefore was properly placed into exclusion proceedings. One thing the government would like to note out is that in his brief before this Court, Petitioner is not challenging the denial of his application for temporary resident status. As the service pointed out in its notice of intent to deny, the employers that he listed on his application were subsequently prosecuted by the U.S. Attorney's Office in Portland, Oregon, for having submitted fraudulent employment documentation for applicants under the SAW program. The Petitioner was not listed as an employee who they actually employed in agricultural services. Therefore, that's what prompted the service's notice of intent to deny. Furthermore, as we point out in our brief, because Petitioner by his own admission first entered the United States in March of 1988, he was not even eligible for SAW because under the statute, you must have showed that you worked 90 man days in agricultural work in the period ending May 1st, 1986. He was not even in the country until 1988. Therefore, he could not have qualified. And lastly, although it was not denied for this reason, the Section 210 said that SAW applications had to be filed within the 18-month period ending on November 30th, 1988. Petitioner's application was not filed until December 22nd, 1988. Therefore, it wasn't timely and it could have been denied on those grounds. Now, in Aguilar Medina, this Court relied on the language of 8 U.S.C. 1160A4, which provides that during the period an alien is in lawful temporary resident status, he has the right to travel abroad in the same manner as for aliens lawfully admitted for permanent residence. The alien in Aguilar Medina, his application for SAW had been granted, and he was a lawful temporary resident three years before he made his departure to Mexico and then attempted to reenter. The critical fact that Petitioner would have this Court overlook, in which it should not, is that his application for temporary resident status was, in fact, denied. Therefore, Section 210A4 does not apply to him, and the Flutie Doctrine should not be extended to aliens whose applications are denied, yet alone even aliens whose applications are still pending at the time they make their departure. Petitioner was properly placed in the exclusion proceedings, as I pointed out, because he did not have a valid entry document. Under ACFR 210.4b2, permission to travel abroad for SAW applicants whose applications are pending shall be granted in accordance with the service's advanced parole provisions. Mr. Nichols will argue, I'm sure, that he had an employment card which was facially valid and that that should have gotten him passed back into the country. Yes, Your Honor, but Petitioner and the immigration judge, for that matter, has provided absolutely no authority for the proposition that an employment authorization document is, in fact, a valid travel document that entitles one to reentry upon return to the United States. The documents that are listed under 1182A7, employment authorization document, is not one of the ones that are there, and under the regulations prescribed by the Attorney General, he has stated that if you are a pending SAW applicant and you've got an application pending and you want to travel abroad, then the specific procedures you must go through is to apply for advanced parole with the service. Here the alien failed to do that, and therefore he was not in possession of a valid entry document at the time he reentered. Also, we would note out that from the date, Petitioner basically had 30 days from the day that the service denied his petition on March 17, 1992, in which to seek administrative review with the Administrative Appeals Unit. Because he failed to do that, obviously he argues because he said he didn't get service, but he failed to do that, then that became a final determination 30 days after March 17, and under the regulations at that point, the employment authorization document was no longer valid. So it wasn't a valid document at the time that he did make his reentry in January of 1993. With respect to the issue of notice, Your Honor, the government would point this court to 8 U.S.C. 1305a, in which Congress has required all made aliens to notify the agency in writing of each change of address within 10 days from the date of the address change. The Attorney General has also prescribed in 8 C.F.R. 265.1 that all aliens are to report change of addresses in Form AR-11, which are available at all post offices and INS offices within the United States. Therefore, Petitioner was on constructive notice, pursuant to the statute and the regulation, that when he moved, he needed to notify the INS of his move on the required form. Ignorance of the laws is simply not an excuse in this case. Due process was satisfied because the service followed the regulations by mailing its notice of intent to deny and its final decision denying the application to the last address that was on record for the Petitioner, which was the address that he indicated on his application for temporary residence. There is no evidence in this case that Petitioner made any inquiries with the service during the three years his application was pending as to respect to what the status of it was, or when he came in on the three times to renew his employment authorization document, there's no evidence that he inquired at that point, hey, what's going on with my application for temporary residence? As this Court held in Farhad v. INS, an alien does not have to actually receive notice of an action in order for the requirements of due process to be satisfied. Rather, due process is satisfied if service is conducted in a manner reasonably calculated to ensure that notice reaches the alien. That is precisely what the agency did in this case. They mailed its notice of intent to deny and the denial to the last address of record. Therefore, the notice issue has no merit. Furthermore, Petitioner has not shown any prejudice as a result of the lack of notice because, again, he was not in lawful status at the time that his application was denied. And he argues in his brief that, well, if I had known it had been denied, then I never would have left the country. Again, he hasn't shown any prejudice because he was still not in lawful status and could have been placed into deportation proceedings. And at that time, we would also note that he had not accrued the requisite seven years of physical presence that was necessary in order to apply for suspension of deportation. And that also in ARERA, Congress stated that the stop time provisions for the continuous presence requirement, which are stopped upon service of the order to show cause, that that would also apply to order to show cause issued before ARERA's effective date. Therefore, he just would not have been eligible for suspension in this case, Your Honor. I've covered all the points that I wanted to make. I don't think we have any further questions. So let's hear from Mr. O'Connor. Thank you. If you have any comments on the Noriega issue, you're free to make them. But perhaps you do want to focus on ARERA. Yes, Your Honor. I just note that it is a removal case, and the government was correct in pointing out that Noriega Lopez did discuss the BIA's authority in the context of removal. However, footnote 5 states, any reference to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation. For purposes of this case, consequently, the terms order of removal and order of deportation are interchangeable. The Noriega, the government cites the Anti-terrorism and Effective Death Penalty Act of 1996, ADEPA, in support of its theory that Noriega only applies to removal cases. However, ADEPA predates the existence of removal proceedings by about a year. It was signed into law on April 24, 1996. Removal came into existence on April 1, 1997, with the effective date of AIRA-AIRA. It's interesting. They note on footnote 6 of Noriega, ADEPA's explanation of what an order of deportation is and from whom it originates filled a void since the old INA did not include the term in its definitions. They note that, you know, prior to that date, that they had never actually clarified who had the authority to issue an initial order of deportation. They also cite the current act, 8 U.S.C. section 1229A1, which says an immigration judge shall conduct proceedings for deciding the admissibility, which would be exclusion, excludability, or deportability of an alien. Unless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be removed from the United States. So they covered there, because many sections of AIRA-AIRA are retroactive. And the counsel for the government explained that. They said that because of AIRA-AIRA, he would be, if he were actually placed in deportation proceedings within seven years under AIRA-AIRA, they would, because of the stop time rule, he would lose eligibility. AIRA-AIRA affected this court's ability to review any discretionary applications under the Immigration Act, with the exception of asylum for its strict judicial review. So AIRA-AIRA did create removal proceedings, but it also did a lot more. It affected every aspect of deportation proceedings and exclusion. So it's quite clear that although Noriega v. Lopez was a case, you know, in removal proceedings, they were quite clear that the BIA's authority to issue initial orders of deportation, it doesn't have the authority to issue initial orders of deportation or exclusion. Now, alternatively, I'd say that this individual departed from the United States four times using his work authorization, and he was inspected every time. People who were SAWS applicants under INA Section 210 regularly went and visited family members in Mexico, came back, showed their work authorization, and were admitted into the country. The judge found it significant, as far as the notice issue, that in March the service denied his case, and in February, the prior month, they had sent his renewed work authorization to his correct address. It wasn't as if the Immigration Service, he had not provided the Immigration Service with their address. The last thing in the file, other than its decision denying his SAWS application, was renewal of his work authorization, which was granted, which contained his current address, and which was issued to him. I think the immigration judge was correct in saying that, in noting that, and saying that this case turns on a matter of notice. And when he re-entered the United States, he had a facially valid work authorization, which he had used on three prior occasions to enter the United States, and had thousands of other SAWS applicants. As far as whether the Flutti Doctrine would apply, we have the cases from this Court. Aguilera-Medina saying that, okay, someone who has been granted SAWS, therefore, we would let the Flutti Document apply. But Espinoza also applied that to an applicant. There are two kinds of amnesty under 245A and 210, 245A for people who had been here prior to 1982. There they would apply the Flutti Doctrine to an applicant who had not yet been granted temporary resident status, but was merely an applicant. And the Board said in reviewing this case, they said, well, that was amnesty under Section 245A, and here we've got amnesty under Section 210, so it's not, you know, totally on point. However, I would say that they're very similarly situated individuals, and that they were both, you know, under the Immigration Reform Act of 1986, which produced the amnesty program, and similarly situated applicants should be treated similarly unless there's some valid reason to do otherwise,  And therefore, I think the judge was correct in saying this was not a case where she would find that he made an entry and therefore would be deprived of a whole list of discretionary applications, which would be unavailable to him in exclusion. And she terminated the case without prejudice to the government, placing him in removal proceedings. Of course, the government didn't want that because, therefore, since he has children, since he's been here for, you know, more than 10 years, he's eligible to apply for relief. So we have the one issue of Noriega-Lopez, which very specifically applies to, which states quite clearly that the Board of Immigration Appeals cannot issue a order of exclusion in the first instance. However, if the Court were to find that that were not the case, I think that the Court could affirm the immigration judge's decision and overturn the findings of the Board of Immigration Appeals. Okay. Further questions? Thank you, counsel. If I heard Mr. O'Connor correctly, you indicated that you did have some supplemental authorities. If you would just leave a gum sheet with the clerk and provide a copy to Mr. Nichols. I have the handwriting on it. Is that okay? Sure. Okay. Thank you. Okay. Keep going. I'm fine. Keep going? All right. We'll next turn to the matters.
judges: Rymer, Hawkins, Bybee